## HEATON ET AL. v. GRANT LODGE, No. 335, INDEPENDENT ORDER OF ODD FELLOWS.

### [No. 7,984.   Filed December 10, 1913.]

1. APPEAL.—*Questions Reviewable.—Motion to Modify Judgment.* —A trial court is entitled to know on what ground a motion to modify a judgment is based, hence no question is presented on appeal under an assignment of error in the overruling of such a motion, where no reasons were stated in such motion for the modification asked.   p. 103.

2. JUDGMENT.—*Modification.*—A motion to modify a judgment will not lie, where the effect of the modification would be to completely change an adverse judgment to one favorable to the party asking such modification.   p. 103.

3. QUIETING TITLE.—*Proof Required.—Burden.*—By a complaint in ordinary form to quiet title, plaintiff assumes the burden of proving not only his title to the real estate in controversy, but that the defendant is, without right, claiming and asserting some title to or interest in such real estate adverse to that of plaintiff.   p. 107.

4. MORTGAGES. — *Foreclosure. — Interests Barred. — Rights Under Lease for Term of Years.*—While a judgment by default foreclosing a mortgage against one who was properly made a party to the action, and duly served with process, and required to answer as to any interest he might have or claim in the premises, will be conclusive as to any prior claims of interest or title adverse to the plaintiff, only claims of interest or title made by such party in or to the property which is the subject of the foreclosure are thus concluded, and such a suit would not challenge him to answer or defend against a claim of interest in some other or different property from that covered by the mortgage in suit; hence the rights of the occupant of a building erected for its use under a contract which in effect was a lease for a term of years, who joined in the execution of a mortgage on the premises, were not barred by a default judgment in foreclosure of the mortgage, where the complaint in the foreclosure suit merely described the real estate, and neither it, the mortgage, nor the note in any way mentioned such contract.   pp. 107, 109.

5. LANDLORD AND TENANT.—*Lease.—Nature of Contract.—Personal Property.*—A lease for a term of years is an encumbrance against the possession of real estate, rather than against the title thereto, and is construed as personal property and not real estate.   p. 108.

6. MORTGAGES.—*Property Subject.—Leases.*—A lease for a term of years may be mortgaged, and may be included in a mortgage given

on the real estate which it covers, but, in order that it may be so covered and included in a mortgage, it must appear from the mortgage that the parties intended to so include it.   p. 109.

7.   LANDLORD AND TENANT.—*Lease.*—*What Constitutes.*—A contract between the owner of a lot and a fraternal order that the former would construct a one-story building on his lot so that the latter could erect a second story to cover it and a similar building to be erected on an adjoining lot, and that in consideration for the erection of the second story the owner of such lot leased and rented the second story to such order for a period of ninety-nine years, gave to the latter no title or interest in the real estate, but was merely a lease for a term of years.   p. 109.

8.   MORTGAGES.—*Assumption of Payment.*—*Deed.*—*Construction.*— Where a deed conveying land to plaintiff recited that "the grantors convey to the grantee all shelving, gas fixtures, except * * * this conveyance is made subject to a mortgage held by * * *, Also street assessments against the lots for street improvements which grantee agrees to assume." the grantee must be held to have assumed the payment of the mortgage, since the effect that might otherwise have prevailed from the fact that the word "also" in the provision for the assumption of street assessments began with a capital is nullified by the fact that it is preceded by a comma, and that the language is fairly open to the construction that the payment of the mortgage was assumed. p. 110.

9.   SUBROGATION.—*Foreclosure of Mortgage.*—*Purchase at Foreclosure Sale.*—Where a mortgagor conveyed land, and his grantee assumed the payment of a mortgage thereon, the grantee could not, by suffering the mortgage to be foreclosed and buying in the title acquired by a purchaser at the foreclosure sale, acquire additional rights as against the right of possession by a tenant of the mortgagor under a lease for years, who was made a party to the foreclosure suit and defaulted.   p. 110.

10.   MORTGAGES.—*Rights of Purchasers at Foreclosure Sale.*—*Estoppel.*—*Effect as to Coparties.*—*Appeal.*—Where an appellant, claiming under a purchaser at a foreclosure sale, was by virtue of a prior deed from the mortgagor in which he assumed the payment of the mortgage, estopped from asserting any rights superior to those of the mortgagor as against the right of possession by a tenant of the mortgagor under a lease for years, who with the mortgagor was defaulted in the foreclosure suit, such estoppel operates to prevent a reversal as to his coappellants, claiming under such purchaser at the foreclosure sale, who, on the theory that they were tenants in common with him, joined him in an action against the tenant of such mortgagor to quiet their title. p. 111.

11. QUIETING TITLE.—*Burden of Proof.*—*Cotenants.*—A tenant in common, by joining another in an action to quiet their common title, undertakes the burden not only of proving title in himself, but also title in his cotenant.  p. 111.

From Jay Circuit Court; *John W. Macy*, Special Judge.

Action by Wait M. Heaton and another against Grant Lodge, No. 385, Independent Order of Odd Fellows. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Frank H. Snyder* and *Whitney E. Smith*, for appellants. *D. F. Taylor* and *Charles C. Weimer*, for appellee.

HOTTEL, J.—This is an action begun by appellants Wait M. Heaton and his wife, Viola A. Heaton, against the appellee Grant Lodge, to quiet appellant's title to a lot or tract of real estate in the town of Mt. Vernon (now Redkey), Jay County, Indiana, to wit: "A part of lots 7 and 8, in block 1, in the town of Mt. Vernon (now Redkey) bounded as follows: Beginning at the southwest corner of said lot 7, and running thence east 23 feet; thence north 95 feet; thence west 23 feet; thence south 95 feet to the place of beginning." The issues of facts were tendered by a complaint in one paragraph and a general denial. Before trial, Viola A. Heaton died and her children Robert S. and Alice C. Heaton were substituted as plaintiffs. There was a trial by the court and a general finding and judgment for appellee. Appellant Wait M. Heaton filed a separate motion for new trial which was overruled. Appellants Robert S. and Alice C. Heaton filed a motion to modify the judgment and also their separate and several motions for new trial. These motions were each overruled. Exceptions were properly saved to the several rulings, and they are each separately assigned as errors by the respective parties against whom they were made, and are, by them respectively, relied on for reversal.

It is enough to say with reference to the ruling on the motion of appellants Robert S. and Alice C. for a modifi-

cation of the judgment, that no available error is presented by such motion for either of two reasons:

(1)   Such motion states no reason for the modification asked, and the trial court was entitled to know on what ground the motion was based.   1 Hogate, Pl. and Pr. §871; *Hormann* v. *Hartmetz* (1890), 128 Ind. 353, 358, 27 N. E. 731; *Evans* v. *State* (1898), 150 Ind. 651, 655, 50 N. E. 820; *Borror* v. *Carrier* (1904), 34 Ind. App. 353, 372, 73 N. E. 123.   (2)   The effect of the modification would have been to change the judgment completely from one adverse to those asking the modification to a judgment in their favor, and no error results from overruling a motion asking such a modification.   *Strange* v. *Tyler* (1883), 95 Ind. 396, 397; *Dorsey* v. *Dorsey* (1902), 29 Ind. App. 248, 250, 64 N. E. 475.   This must be true because, in deciding such motion, the court cannot look beyond the finding and the pleadings (*Furry* v. *O'Conner* [1891], 1 Ind. App. 573, 580, 581, 28 N. E. 103; *Shaw* v. *Newsom* [1881], 78 Ind. 335, 338,) and if the finding should have been in favor of such appellants, instead of against them, it must follow that such finding would not be sustained by sufficient evidence, and would be contrary to law, and hence such error would be presented by the motion for new trial.

We next consider the question presented by the motion for new trial made by appellant Wait M. Heaton.   It is insisted by the appellant that the decision of the trial court against him is not sustained by sufficient evidence.   There is little or no dispute in the evidence.   The facts disclosed by it are substantially as follows:   on February 15, 1894, Martha F. Paxon, widow of Pierce I. Paxon, deceased, who was then the owner of said real estate above described and other real estate adjacent thereto, by her warranty deed conveyed to Charles E. Walker and his wife Isabelle Walker, said lot above described and on the same day conveyed to appellee Grant Lodge a lot of the same dimensions immedi-

ately east of and adjacent thereto. On the same day, said Walker and Walker and appellee, Grant Lodge, by and through its trustees, entered into a written agreement wherein they recited that they were the respective owners of said two adjacent lots and that they mutually desired to erect a substantial two-story brick building thereon with brick partition wall as high as the first story, on the line dividing said lots and provided for the erection, use, occupancy and lease of said building and the terms and conditions thereof in part as follows:

"The party of the first part (Walker and Walker) covenants and agrees to put in good, suitable and substantial foundation and complete a good and substantial brick building on his said ground to be twenty-three feet (23) wide and not less than seventy-five (75) feet long to be built as high as and constituting the first story including good and suitable joists on the top thereof. The walls of said story to be of suitable material and thickness to properly support another story on the top thereof: Provided, however, that the partition wall hereinbefore mentioned shall be thirteen inches thick with a proper and suitable foundation thereunder, which wall and foundation shall be constructed by both of said parties each bearing one-half of the expense thereof. And the party of the second part covenants and agrees to construct a like building and of like dimensions on their said ground and to assist in constructing said partition wall and its foundation bearing one-half the expense thereof and that they will construct and complete a second story on said building serving as a second story for both the portion built by first and second parties. Second party to properly and substantially roof said building and to put a good and proper front in said second story suitable for such building and bear all the expense of said second story. The fronts of the two lower stories alike. In consideration whereof said first party has leased and rented and does hereby lease and rent unto said trustees and their successors for the use of said lodge and their grantees and assigns the second story so to be constructed over the portion of said building to be built by said first party as aforesaid for and during the term and period of ninety-nine years from and after the date hereof, renew-

able at the option of second party their grantees and assigns forever on their compliance with the terms and conditions on their part to be done and performed herein stipulated.''

This agreement was recorded February 16, 1894. On March 22, 1894, Walker and Walker and said Grant Lodge executed a mortgage on said Walker and.Walker lot above described to ''No. Two Indiana Mutual Building and Loan Association'' of Indianapolis, to secure a note of date March 1, 1894, for $1,000 signed by same parties. On October 20, 1894, a mortgage in the same form by same parties and to same association was executed to secure a second note given by same parties for $300. On February 18, 1897, there was filed in the Jay Circuit Court by said building and loan association a suit to foreclose said mortgages. Said lodge was made a defendant to said foreclosure proceeding and by and through its trustees was summoned to appear thereto, and was defaulted. On April 1, 1897, a judgment and decree of foreclosure was entered by said court in said action. On March 11, 1897, Walker and Walker, by warranty deed conveyed said real estate to Wait M. Heaton and John M. Sims which deed contained the following provision:

''Also the grantors convey to the grantees all the shelving, gas fixtures, except regulator and other fixtures belong to said property, this conveyance is made subject to a mortgage held by the Indiana Mutual Building and Loan Association of Indianapolis, Indiana, also the street assessments against said lots for street improvements which grantee agrees to assume.''

On September 17, 1899, Wait M. Heaton and John M. Sims obtained in the Jay Circuit Court a judgment quieting title in them to the lot here involved as against any and all claims of Charles E. and Isabelle Walker, said judgment being obtained on a cross-complaint filed in an action brought by Charles E. Walker et al. On November 13, 1899, the sheriff of Jay County conveyed by deed said real estate to

Viola A. Heaton and Jane E. Sims. This deed recited among other things that said judgment had been obtained by said building and loan association at the March term, 1897, of said Jay Circuit Court together with "a decree for the sale of all the interest, estate, right and title of the defendant Charles E. Walker et al. in and to certain real estate" (describing the real estate here involved); that on April 7, 1897, a copy of said decree was issued and delivered to the sheriff of said county directing him to sell; that after giving notice and after offering rents and profits, he then "offered at public auction all the rights, title and interest in fee simple of the said Charles E. Walker et al. in and to said real estate," and the said building and loan association bid the same in; that on May 1, 1897, such sheriff executed to said association a certificate of purchase for said real estate; that on February 2, 1898, for a valuable consideration, the said association "did sell, assign, transfer and set over to Viola A. Heaton and Jane E. Sims, the certificate of purchase"; that to confirm to said Viola A. Heaton and Jane E. Sims the sale so made, the said sheriff in consideration, etc., "hath granted, bargained, sold and doth by these presents, grant, bargain, sell convey and confirm to the said Viola A. Heaton and Jane E. Sims heirs and assigns forever all the following real estate * * * in as full and ample a manner as the same was held by Charles E. Walker et al. immediately before the execution of the mortgage mentioned in said decree foreclosing the same." This deed was acknowledged March 6, 1900, and on the same day filed for record. On January 28, 1905, Jane E. Sims, by warranty deed conveyed an undivided one-half of said real estate to Wait M. Heaton, which deed was recorded June 6, 1906. Jane E. Sims was the half-sister of Viola A. Heaton, and Viola A. Heaton was the wife of Wait M. Heaton. Viola A. Heaton died on April 25, 1908, and left surviving her as her heirs her said husband Wait

M. Heaton and two children Robert S. and Alice C. Heaton, the coappellants of Wait M. Heaton.

The appellants, by their complaint, took upon themselves the burden of proving not only title in themselves to the real estate in controversy, but also that the appellee 3. was, without right, claiming and asserting some title to or interest in said real estate adverse to that of appellants. *Cuthrell* v. *Cuthrell* (1884), 101 Ind. 375, 377, 378; *Davis* v. *Commonwealth, etc., Co.* (1904), 141 Fed. 711, 733, 734; *Head* v. *Fordyce* (1860), 17 Cal. 149, 152; 12 Ency. Ev. 607.

The only proof of any claim made by appellee to any right in, or to, said real estate was that of its claim to possession under said written agreement between it 4. and Walker and Walker. In this connection it is insisted by appellants, in effect, that all right of appellee including its right to possession, under said agreement, was foreclosed in the said foreclosure proceeding to which it was made a party and suffered a default, and that by such default it has estopped itself from asserting any claim under the agreement. It is true that "in an action to foreclose a mortgage, a judgment by default against one who was properly made a party to the action, and duly served with process, and required to answer as to any interest he might have or claim in the premises will be conclusive as to any prior claims of interest or title adverse to the plaintiff." 1 Wiltsie, Mortg. Foreclosures (3d ed. by Spurr & Rogers) §502. See, also, *Maynard* v. *Waidlich* (1900), 156 Ind. 562, 571, 60 N. E. 348; *Adair* v. *Mergentheim* (1887), 114 Ind. 303, 306, 16 N. E. 603; *Miller* v. *Hardy* (1891), 131 Ind. 13, 18, 29 N. E. 776; *Barton* v. *Anderson* (1885), 104 Ind. 578, 581, 582, 4 N. E. 420; *Pilliod* v. *Angola R., etc., Co.* (1910), 46 Ind. App. 719, 726, 91 N. E. 829. It must be obvious, that this rule can have application only to claims of interest

or title made by the defaulted party in or to the property which is the subject of the foreclosure. Such a suit would not challenge such party to answer or defend against a claim of interest in some other or different property from that covered by the mortgage in suit. In the case at bar, the only property mentioned in either of the mortgages or in the complaint for foreclosure was the real property owned by Walker and Walker. The appellee had signed the mortgages to such real estate and the notes which the mortgages were given to secure, and was therefore a proper party to the suit and by the default which it permitted to go against it, lost any title or interest it may have then had in or to such real estate. Said written agreement was not mentioned in the mortgages, or either of them, or in the complaint for their foreclosure, nor was there any averment in such complaint to the effect that appellee was claiming any right, title or interest in said real estate adverse to that of the mortgagee. The complaint in that suit challenged appellee to answer and defend simply and solely as one of the signers of such notes and mortgages. Hence we are called on to determine whether appellee's claim, under the agreement, is such as is covered by the principle above announced, and this, we think, depends on whether such agreement created a title or interest in the real estate in question, or amounts to no more than a lease for years. We say this because as before indicated, the foreclosure proceedings as against appellee had the effect only of cutting off whatever equity of redemption it may have had in the mortgaged premises and estopped it from afterward asserting any claim or interest in the real estate that would have furnished it such right to redeem from such sale. A lease for a term of 5. years is not of this character. It is an incumbrance against the possession of real estate, rather than against the title thereto, and is construed as personal property and not real estate. *Shipley* v. *Smith* (1903), 162 Ind. 526, 70 N. E. 803; *Mark* v. *North* (1900), 155 Ind. 575, 57

N. E. 902. It may, of course, be mortgaged and may
6. be included in a mortgage given on the real estate
which it covers; but, in order that it may be so cov-
ered and included in such mortgage, some evidence of the
intention of the parties to include it, must appear in the
mortgage. Nothing of this kind appears in either
4. of the mortgages here involved or in the complaint
for their foreclosure. Appellee's lease was of record
at the time the mortgages in question were executed and if
the building and loan association had sought to include it
in the property covered by its mortgages, it could have very
easily done so, but nothing appears on the face of either
of the mortgages indicating any such intention.

The complaint in the foreclosure proceedings, by its aver-
ments, required appellee to answer only as to such interest
as it might have in the equity of redemption in the mort-
gaged real estate, and hence the decree of sale thereunder
of such mortgaged property could have no further effect
than to adjudicate appellee's title and interest in *said real
estate* and estop it from ever after asserting any such title
or interest therein. This the appellee concedes and in effect
insists that it is not now claiming or asserting any right or
title in the real estate, but asserts only the right to posses-
sion under its lease. Hence it must follow that, un-
7. less the agreement before set out must be construed
as creating and giving to appellee some title and
interest in said real estate rather than creating a lease for
a term of years only, appellee's rights thereunder will not
be affected by such foreclosure proceeding. We think that
such agreement gave to appellee nothing more than a lease
for years, and hence a right to possession only of said real
estate; but, even if it be conceded that such agreement gave
to appellee some interest or title in said real estate, still
appellant Wait M. Heaton is in no position to ask a reversal
of the judgment below. We say this because, notwithstanding
appellants' contention to the contrary, we think the evidence

warranted the trial court in concluding that Wait M. Heaton by his deed from Walker and Walker, assumed and agreed to pay said mortgage indebtedness against said real estate.

Appellant Wait M. Heaton insists that by the provision in said deed, which we have before set out just as it appears in the record herein, he assumed and agreed to pay only the assessments for street improvements on said lot. He bases his contention on the fact that the word "also" in said provision begins with a capital letter and hence is the beginning of a new sentence. The answer to this contention is that such word is preceded by a comma. The language of the deed itself is fairly open to the construction that appellant Wait M. Heaton not only assumed and agreed to pay the assessment for street improvements, but also the mortgage indebtedness. The after conduct of the parties, together with appellants' long acquiescence in appellee's possession, and laches in bringing this action, was additional evidence warranting the trial court in inferring that such was the intent of the parties to such agreement. If we are correct in this conclusion, appellant, Wait M. Heaton, has nothing on which to ground his contention that the decision of the trial court against him is not sustained by sufficient evidence.

It would not be seriously contended that Walker and Walker could successfully resist appellee's claim to possession under said agreement it had with them, and we know of no principle of law that, under the evidence in this case, would give Heaton any title or interest to such real estate greater than, or different from, that of his said grantors, and he certainly should not be allowed to profit by a conveyance received from the grantee of a purchaser at a foreclosure sale of a mortgage given to secure a debt which he had himself assumed and agreed to pay. See *Todd* v. *Oglebay* (1902), 158 Ind. 595, 599, 64 N. E. 32; *Oglebay* v. *Todd* (1906), 166 Ind. 250, 76 N. E. 238, and authorities there cited. As the grantee of the equity of re-

demption from Walker and Walker, the appellant, Wait M. Heaton, can occupy no better position than Walker and Walker would occupy if they had brought this action. *Miller* v. *Williams* (1899), 27 Colo. 34, 42, 59 Pac. 740; *Fritts* v. *Palmer* (1889), 132 U. S. 282, 289, 10 Sup. Ct. 93, 33 L. Ed. 317.

Appellants Robert S. and Alice C. Heaton also rely on the insufficiency of the evidence to sustain the decision of the court as to them, and what we have said in our discussion of this ground of the motion for new trial of appellant Wait M. Heaton on the subject of the foreclosure proceeding estopping appellee from asserting its claim under said agreement applies with equal force to the contention of Robert S. and Alice C. This would prevent a reversal of the judgment as to them. We may also add that, under the complaint in this case, Robert S. and Alice C. Heaton are in no better position than their coappellant in so far as they are affected by the last question above discussed. The mother of these appellants under whom they claim, joined with their coappellant, Wait M. Heaton, and filed a complaint which proceeds on the theory that she and Wait M. Heaton, as tenants in common, were entitled to have their title quieted to the real estate in controversy. Upon their mother's death, Robert S. and Alice C. were substituted in her stead. By joining with Wait M. and asking that such common title be quieted, said appellants undertook the burden of proving not merely title to the respective parts owned by them but they also assumed the burden of proving title in their coappellant who they allege is one of the owners of such common title. The common title thus jointly asserted by all the appellants, could be no better than the title to either of the several parts which constituted it, and hence appellants' right to recover under the complaint, was no better than, but was identically the same as that of their coappellant, Wait M. Heaton, and

that which would prevent his recovery would likewise prevent their recovery.

We find no reversible error in the record, and the judgment below is therefore affirmed.

NOTE.—Reported in 103 N. E. 488. As to amendment of judgment, see 12 Am. Dec. 351; 62 Am. St. 233. As to right of subrogation, see 99 Am. St. 474. See, also, under (1) 23 Cyc. 876; (2) 23 Cyc. 868; (3) 32 Cyc. 1369; (4) 27 Cyc. 1794; (5, 7) 24 Cyc. 958; (6) 27 Cyc. 1040; (8) 27 Cyc. 1344; (9) 27 Cyc. 1435; (10) 16 Cyc. 715.